**In re Kenneth G. SCHIPPER, Debtor.**

**FULTON STATE BANK, an Illinois banking corporation, individually and derivatively, Appellant,**

v.

**George SCHIPPER, et al., Appellees.**

**No. 90–1506.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1990.

Decided May 22, 1991.

**514**

Thomas J. Potter, Morrison, Ill., for appellant.

Stephen Balsley, Barrick, Switzer, Long, Balsley & Vanevera, Bernard J. Natale, Rockford, Ill., John S. Callas, Klockau, McArthy, Ellison & Marquis, Rock Island, Ill., for appellees.

Before BAUER, Chief Judge, FLAUM, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

The issue in this bankruptcy appeal is the propriety of a land sale made by the debtor, Kenneth Schipper. Our story begins in May 1988, two months before Schipper filed for bankruptcy. Early that month, Schipper got an offer from John Dornfeld for some land that Schipper owned in Rock Island County, Illinois. Dornfeld offered Schipper $45,830 for two tracts of land that abutted Dornfeld's property. Schipper was quite interested, and had his attorney prepare installment contracts for the sale to Dornfeld. Before the deal could be consummated, however, Dornfeld backed out. The reasons for that are disputed, but the bankruptcy court believed Dornfeld's testimony that the deal went sour because Schipper was unable to clear up the title to the property due to a lien held by Appellant Fulton State Bank (the "Bank"). At any rate, Dornfeld left the picture and purchased instead some property up in Wisconsin. Soon thereafter, Schipper filed for bankruptcy under Chapter 11, his biggest creditor being the Bank.

Early in the administration of Schipper's estate, Schipper's parents offered to purchase the same two tracts of land for $340 per acre, or $7,791. An appraisal ordered by the Bank had valued the property at this amount. Schipper's parents also offered to buy an additional 19 lots of Schipper's land for $6,950, again reflecting the value fixed by the Bank's appraisal. Schipper filed in the bankruptcy court a petition to sell the property free and clear of liens. Attached to the petition was the offer itself, which contained the legal description of the 19 lots and the two tracts, as well as the amount offered for each. The bankruptcy court served notice of the petition to all the creditors. The notice listed the full purchase price offered by the parents for all the property, but mentioned only the 19 lots. A hearing was then held on the petition. No objections were lodged by the Bank or any other creditor, so the bankruptcy court granted the petition and the property was sold to Schipper's parents free and clear of liens.

Over one year later, Dornfeld reappeared and reasserted his interest in buying the two tracts. Dornfeld offered the parents the same price he had offered their son: $45,830. The parents sold Dornfeld the two tracts and, in the process, bagged a tidy $38,000 profit. The Bank soon got wind of the sale to Dornfeld and didn't like what it smelled. The Bank filed a motion to set aside the free and clear sale to the parents, and the U.S. Trustee instructed Dornfeld's attorney to withhold payment on the two tracts pending resolution of the dispute. After Schipper's Chapter 11 plan

had been confirmed, the bankruptcy court dismissed the Bank's motion to set aside the sale, ruling that the proper context for the Bank's claim was an adversary proceeding.

Heeding the court's advice, the Bank filed an adversary proceeding in the bankruptcy court against Schipper, his parents, Dornfeld, and Dornfeld's attorney. The Bank's complaint asked the court to set aside the sale to Schipper's parents, but not the sale to Dornfeld. The Bank asked the court to allow the sale to Dornfeld but to impose a constructive trust on the profits in favor of the creditors. Pursuant to this constructive trust theory, the Bank requested an order directing Dornfeld's attorney to turn over for distribution to the creditors the proceeds of the sale.

After a bench trial, the bankruptcy court ruled that Schipper had not breached his fiduciary duty to the creditors by not informing them of the unconsummated, pre-bankruptcy negotiations with Dornfeld, that no fraud had been shown, and that there were no other defects in the sale. Thus, the bankruptcy court dismissed the adversary proceeding. *In re Schipper*, 109 B.R. 832 (Bankr.N.D.Ill.1989). Finding no error in either the bankruptcy court's factual findings or its application of fiduciary standards for debtors to those facts, the district court affirmed. *In re Schipper*, 112 B.R. 917 (N.D.Ill.1990). The Bank filed a timely appeal.

■ The first issue raised by the Bank, and the only one involving a question of law, concerns the nature of the duty Schipper owed to his creditors. Schipper was a debtor in possession and, as such, owed a fiduciary duty to his unsecured creditors. *See, e.g., In re Devers*, 759 F.2d 751, 754 (9th Cir.1985); *In re Modern Office Supply*, 28 B.R. 943, 944 (Bankr.W.D.Okla. 1983). As part of this general duty, Schipper was required to meet the standards of Section 363 of the Bankruptcy Code, *see* 11 U.S.C. §§ 363(b) & (f), which apply to the free and clear sale of assets of a debtor's

estate outside the ordinary course of business.[1] Under Section 363, the debtor in possession can sell property of the estate outside the ordinary course of business if: he has an "articulated business justification," *In re Continental Air Lines*, 780 F.2d 1223, 1226 (5th Cir.1986), he provides adequate notice to all creditors, and a hearing is held on the sale. *See generally In re Naron & Wagner, Chartered*, 88 B.R. 85, 88 (Bankr.D.Md.1988).

The bankruptcy court recognized and discussed both Schipper's general fiduciary duty and the requirements of § 363, and applied them to Schipper's sale of property to his parents. After so doing, the court was "unable to find a breach of a fiduciary duty, or a duty of trust owed to the estate and the creditors, by [Schipper] under either standard." *Schipper*, 109 B.R. at 836. The standards of Section 363 were met, concluded the court, because Schipper had sound business reasons for making the sale; the price was based on an independent appraisal; all the creditors received adequate notice of the details of the proposed sale, including the relationship between buyer and seller; and a hearing was held at which all of the creditors were given an opportunity to object. As to Schipper's general fiduciary duty to his creditors, the court analogized to the duties of a corporate fiduciary under state law. The court turned to this analogy because little or no case law exists addressing the specifics of a debtor in possession's fiduciary duty in the context of a sale of assets. Based on this analogy, the bankruptcy court concluded that Schipper did not breach his fiduciary duty and the "general standard of inherent fairness" because "the sale was made in good faith and carrie[d] all the earmarks of an arm's length transaction." *Id.* at 837. With all of these conclusions the district court agreed. We are inclined to agree as well.

The Bank argues that the bankruptcy court did not hold Schipper to a sufficiently exacting duty to his creditors. The Bank

---

**1.** Although Section 363 by its terms refers to the rights and duties of bankruptcy trustees when disposing of assets, 11 U.S.C. § 1107(a) provides that a debtor in possession steps into the shoes of the trustee for these purposes.

suggests that Schipper should be held to the high standard of duty applied in the common law to trustees. Although the Bank does not bother to suggest exactly why the corporate fiduciary standard is "wrong" and the trustee standard is "right," it does argue that the requirements of Section 363 are "irrelevant" because Schipper breached his duty to the creditors (by failing to disclose the offer from Dornfeld) *before* the Section 363 proceedings were initiated. We will not detail the many fallacies upon which this house of cards rests, but one fact is most telling: the Bank fails to cite to a single case in which a court has applied the trustee standard to a debtor in possession. That is because there are none. As discussed above, under the federal statutory bankruptcy scheme, a debtor in possession who wishes to sell assets of his estate is required to fulfill his fiduciary duty and to satisfy other protections for the benefit of the creditors. Those protections and duties are sufficient without engrafting as well the duties of care and loyalty reserved by the common law for trustees.

It is quite clear why the Bank seeks the application of the more exacting duty owed by a common law trustee: traditionally, a trustee's duty includes the duty to disclose to the beneficiaries all material facts that might affect the value of the trust's assets or the desirability of a transaction. *See* Restatement (Second) of Trusts §§ 170(2) & 173. The target here, of course, is Schipper's failure to inform the creditors of the pre-bankruptcy offer, the Bank's primary beef with the sale. The bankruptcy court specifically held that that failure was not a breach of Schipper's fiduciary duty, at least as it understood Schipper's duty. *Schipper*, 109 B.R. at 837. The Bank needs to fix error in that understanding so that Schipper's failure to disclose can be labelled a "breach of duty" and the Bank can receive the equitable and other extraordinary relief it is requesting. Ratcheting up Schipper's duty would do the trick. No soap. This court is as unwilling as were the bankruptcy and district courts to apply the common-law trustee standard of duty to Schipper as a debtor in possession simply so that the Bank can find a breach of that duty.

█ The Bank raises a number of other arguments, none of which merit much discussion. As to the Bank's attempt to paint for this court a picture of fraud and attorney conflict of interest, suffice it to say that we are no more convinced than were the bankruptcy and district courts, especially in light of our deferential standard of review for fraud-related factual findings made by those courts. *See In the Matter of EDC, Inc.*, 930 F.2d 1275, 1280–1281 (7th Cir.1991); *In the Matter of Evanston Motor Co., Inc.*, 735 F.2d 1029, 1031 (7th Cir. 1984); 11 U.S.C.Bankr.Rule 8013. As to the Bank's challenge to the adequacy of the notice of sale under Section 363 (a section that was deemed "irrelevant" in the Bank's earlier argument), suffice it to say that we agree with the bankruptcy court's conclusion that the Bank has failed to meet its burden to prove that this confirmed sale should be voided for defective notice. *Schipper*, 109 B.R. at 834 & n. 6. *See generally In re Met–L–Wood Corp.*, 861 F.2d 1012 (7th Cir.1988).

As the bankruptcy court noted about this case, "at first blush the facts as alleged appear to smack of fraud." *Schipper*, 109 B.R. at 834. The bankruptcy court took a close look at the details of the property transactions between Schipper, his parents, and Dornfeld, and concluded that first appearances are deceiving here. Neither the court's factual determinations nor its application of debtor fiduciary standards warrant our disturbance. Accordingly, the district court's affirmance of the bankruptcy court's ruling is

Affirmed.